CORNELIUS P. LYNCH *vs.* THE LOWELL ELECTRIC
LIGHT CORPORATION.

Middlesex.    January 10, 11, 1928. — March 5, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Negligence*, Electric light company: pole in highway. *Way*, Public: pole.
*Municipal Corporations*, Officers and agents. *Evidence*, Competency.
*Trespass. License.*

After evidence at the trial of an action of tort against an electric light corporation for personal injuries caused by the fall of a pole with the plaintiff upon it, that an assistant clerk of the city had found no record in the clerk's office of any grant of location for the pole, further testimony by

the assistant clerk that "duplicates of papers referring to locations and permits for poles and wires are kept in the wire inspector's office . . . and that it is possible they may be lost in one office and not lost in the other," was not admissible to prove that a location and permit had been granted any one for the location and erection of the pole which fell with the plaintiff.

At the trial of the action above described, it appeared that the pole in question, while it belonged to the defendant, had on it only wires used in connection with the fire and the police departments of the city, and no wires of the defendant. There was no evidence of an express contract between the defendant and the city in relation to the maintenance of poles and crossbars, nor that the city had granted and the defendant had accepted a permit to erect the pole which fell with the plaintiff. *Held,* that

(1) From the fact alone that the pole stood in the public way, the city had no legal right to attach its wires to any part of that pole and its use of it for that purpose, and the use of it by its employees in furtherance of that purpose, were a trespass by the city, or at most a license to it, which imposed no affirmative duty on the defendant to keep and maintain the pole in good repair or in suitable condition for climbing by employees of the city;

(2) A verdict should have been ordered for the defendant.

Tort by an employee of the city of Lowell for personal injuries suffered when a pole, upon which he was in the course of his duties, and which was alleged to be maintained by the defendant, fell owing to a defective condition. Writ dated September 25, 1925.

In the Superior Court, the action was tried before *Sisk,* J. Material evidence is stated in the opinion. The judge denied a motion by the defendant that a verdict be ordered in its favor. There was a verdict for the plaintiff in the sum of $17,500 which was recorded after leave was reserved under G. L. c. 231, § 120, to enter a verdict for the defendant. A motion for the entry of a verdict for the defendant afterwards was denied. The defendant alleged exceptions.

*F. M. Qua,* for the defendant.

*F. W. Mansfield,* (*E. R. Mansfield* with him,) for the plaintiff.

Pierce, J. This is an action of tort. The jury returned a verdict for the plaintiff. Before this verdict was recorded the trial judge reserved leave with the assent of the jury to enter a verdict for the defendant in accordance with G. L. c. 231, § 120. The case comes before this court on the de-

fendant's exceptions to the denial of its motion for a directed verdict and to certain rulings and refusals to rule of the trial judge.   No issues are now presented as to the plaintiff's contributory negligence or assumption of risk, and the judge ruled that there was no evidence of gross or wanton negligence on the part of the defendant.   The bill of exceptions sets out the pleadings, and contains "all the evidence . . . which is material for a determination of the questions raised on this bill of exceptions."

The declaration, concisely stated, alleges that the defendant is a corporation manufacturing and selling electric current in the city of Lowell and vicinity; that in the course of its business it erects and maintains poles and wires; that by the terms of a permit obtained from the city of Lowell it is granted a license to do so on condition that the same shall be kept well painted and in good condition, that the city of Lowell shall be saved harmless against all claims for damages in any way growing out of the erection, maintenance, or use of said poles and shall have the exclusive use of the upper cross arm and tops of said poles for its signal wires to be exclusively used for municipal purposes; and that it was the duty of the defendant to maintain said poles in good, safe, and sound condition.   The declaration, in substance, further alleges that the plaintiff, a lineman in the employ of the city of Lowell, on or about April 17, 1925, while in the exercise of due care and in the pursuit of his duties as a lineman, climbed a pole on Pawtucket Street, almost opposite Walker Street, to do some necessary work upon wires belonging to the city of Lowell which were strung upon the pole in accordance with the terms of the permit; that said pole was owned and maintained and entirely in the control of the defendant; that through the negligence of the defendant, its agents and servants, the pole had not been kept in good, safe and sound condition and had not been kept painted; that in consequence of said negligence it had become rotted and in an unsafe condition so that, and as a result thereof, when the plaintiff climbed upon the pole it broke at or near its base and fell to the ground carrying the plaintiff and severely injuring him.

It was admitted at the trial that the pole which fell with the plaintiff had become rotted, and the plaintiff's evidence tended to show that the pole had a condition of "dry rot" i.e., that the pole had rotted in the interior while the shell remained apparently sound, that it was not painted, and that it broke off at a point several inches below the surface of the ground.  It was agreed at the trial that the pole in question stood on Pawtucket Street, that Pawtucket Street is a public highway, and that the pole stood within the limits of the public highway.

The pole in question had only one double crossbar near the top.  It carried two wires of the city's fire alarm attached to the crossbar; a police box affixed to the side of the pole about four feet above the ground; a cable containing wire of the city's police signal system, which ran from the top of the police box up the side of the pole "clear to the top" and was attached thereto by a series of porcelain knobs, called "buttons," all of which belonged to the city of Lowell; and nothing else.  The plaintiff testified that the police cable was secured at the top of the pole by a tierope which was "tied to the cross arm with insulators"; and again, that it "was attached to the cross arm at the top of the pole"; while a witness for the defendant testified that it went "off to another pole."  Although the pole in question bore a number and a metal strip with the letters "L. E. L." stencilled therein, there is no claim that there were wires of the defendant on or attached to the pole at the time of the accident.  On the uncontradicted evidence that the defendant after the accident removed the fallen pole, cut off a section, and destroyed the remainder of it, with other circumstantial evidence, the jury would have been warranted in finding that that pole was then owned by the defendant. *Perkins* v. *Rice*, 187 Mass. 28, 30.

There was evidence that the pole had held its position for eighteen or twenty years before the day of the accident, but there was no evidence as to who set the pole or more definitely when it was placed.  The evidence of a witness in direct examination, which he repudiated on cross-examination, if believed by the jury, warranted a finding that on

September 1, 1923, the defendant was using the pole for carrying the wires of its #5 arc circuit on that day. Beginning with an act "concerning Electric Telegraph Companies and Electric Telegraphing," set out in St. 1849, c. 93, and continuing through many statutes and amendments to statutes to and including G. L. c. 166, § 22, the Legislature has from time to time authorized the construction of lines for transmitting electricity along, under and across the public ways, "by the erection or construction of the poles . . . and other fixtures . . . which may be necessary to sustain or protect the wires" of the lines; and in substance has provided that the selectmen of towns and the mayor and aldermen of cities may, after a public hearing, grant a location for such lines, specifying therein where the poles may be placed, and, in respect to overhead lines, the kind of poles which may be used, the number of wires which may be attached thereto and the height to which the wires or cables may run. The several statutes in substance provide that the order granting a location shall be recorded by the city or town clerk in "the records of the city or town . . . in books kept exclusively therefor." As respects the pole which fell, there was uncontradicted evidence that the assistant city clerk of Lowell on search had found no record in the office of the city clerk of any grant of location for that pole. The testimony of the assistant city clerk that since 1899 "duplicates of papers referring to locations and permits for poles and wires are kept in the wire inspector's office . . . and that it is possible they may be lost in one office and not lost in the other," was clearly inadmissible in proof that a location and permit had been granted any one for the location and erection of the pole which fell with the plaintiff, and the defendant's exception to its admission is sustained.

Against the exception of the defendant the plaintiff was allowed to introduce in evidence chapter 43 of the ordinances of the city of Lowell, passed in 1884 and reënacted in 1894, which reads: "The mayor and aldermen may give to telegraph, telephone, electric light and other companies desirous of erecting and maintaining wires in the streets and ways of the city, instruments in writing, specifying where in said

streets and ways the posts of said companies may be located, the kind of posts, and the height to which, and the places where, the wires of said companies shall run. Provided, that no such company shall be permitted to erect or maintain their said wires in such positions as to cross from above any wires of the Lowell fire-alarm telegraph. And provided, further, that any and all of said companies shall erect and maintain the topmost crossbar on their said posts for the exclusive use of the wires of the said Lowell fire-alarm telegraph, and such other wires as the city may at any time attach thereto for its own use."

The contention of the plaintiff, that the defendant owed a duty to the city of Lowell and consequently, in the circumstances of this case, to its servants to keep and maintain in a safe condition the pole which fell and the crossbar on the pole, finds no support in the record. There is no evidence therein of an express contract between the defendant and the city of Lowell in relation to the maintenance of poles and crossbars, and no implied contract or duty can be imposed on the defendant which springs out of the quoted ordinance, because there is no reported evidence which would warrant a jury finding that the city of Lowell granted and the defendant accepted a permit to erect the pole which fell with the plaintiff. Its board of aldermen in making grants of locations acts not as its representative but as an independent board on behalf of the Commonwealth. *Metropolitan Home Telephone Co.* v. *Emerson,* 202 Mass. 402. The maintenance of the pole in the public highway by the defendant, without a lawful permit of the board of aldermen, created a nuisance in the highway, which imposed a duty on the city of Lowell to remove it and a liability to an indictment in case of its failure so to do. *Commonwealth* v. *Boston,* 97 Mass. 555. As a maintainor of a nuisance in the highway, the defendant would be liable to a traveller thereon for any injury that person should sustain to his person or property which was due to and proximately caused by the unlawful presence of the pole in the highway. *Boutlier* v. *Malden,* 226 Mass. 479. From the fact alone that the pole stood in the public way the city of Lowell had no legal right to attach its wires

to any part of that pole and its use of it for that purpose, and the use of it by its employees in furtherance of that purpose, were a trespass, or at most a license, which imposed no affirmative duty on the defendant to keep and maintain the pole in good repair or in suitable condition for climbing by employees of the city.

The only other exception necessary to deal with is the defendant's exception to its motion in writing for a directed verdict. That motion should have been granted: the exception thereto is sustained, and judgment is to be entered for the defendant under G. L. c. 231, § 122.

*So ordered.*