UNITED ELECTRIC LIGHT COMPANY *vs.* THE DELISO CON-
STRUCTION COMPANY, INC.

Hampden.    September 23, 1943. — December 29, 1943.

Present: FIELD, C.J., DONAHUE, DOLAN, & RONAN, JJ.

*Trespass. Nuisance. Dangerous Use of Property. License. Real Prop-
erty,* Dangerous use. *Way,* Public: manhole, conduit, tunnel. *Con-
tractor. Evidence,* Res inter alios. *Real or Personal Property.*

Manholes and conduits, installed by an electric light company under a
public way in a city pursuant to a permit granted by the city, did
not become a part of the realty but remained personal property of
the company.

An electric light company was entitled to maintain, free from any inter-
ference due to trespass by a corporation constructing in an adjoining
area a tunnel under contract with a city, manholes and conduits placed
by the company under a public way pursuant to a permit granted by
the city.

A contractor constructing a tunnel under a public way for a city with
knowledge that in the vicinity of such construction were manholes
and conduits of an electric light company lawfully installed under
permits by the city, might be found to have made an unreasonable
use of the land where the tunnel was being constructed and therefore
to have been guilty of trespass toward the company when grout, in-
tentionally forced by him at high pressure into the earth, permeated
beyond the tunnel area into the manholes and conduits, damaging
them, although there was no evidence that the contractor intended
such damage and although the manholes and conduits were personal
property of the company.

Forcing grout at high pressure into the earth in constructing a tunnel
under a public way under contract with a city, in circumstances which
caused it to permeate beyond the tunnel area into adjacent manholes
and conduits of an electric light company, causing damage, might be
found to be such an unreasonable use by the contractor of the space
allotted to him as to constitute a nuisance, for which he was liable to
the company without proof of negligence.

Forcing grout at high pressure into the earth in the process of construct-
ing a tunnel under a public way under contract with a city did not

constitute an undertaking of such extremely dangerous character or such an unusual and extraordinary use of the tunnel area that the contractor was bound at his peril to see that the grout did not escape from that area and damage adjacent property.

At the trial of an action against a contractor with a city for damage caused when grout, forced by him into the earth in the process of the construction of a tunnel under a street, escaped and damaged manholes and conduits of the plaintiff in the street outside the tunnel area, a provision of the defendant's contract with the city requiring him to use care not to injure conduits and other structures in the street and to repair any such damage at his expense was properly excluded from the jury's consideration on the issue of the defendant's duty toward the plaintiff.

Tort. Writ in the Superior Court dated June 11, 1940. The case was tried before *Burns*, J.

*D. M. Macaulay*, for the plaintiff.

*R. T. King*, for the defendant.

Ronan, J. This is an action of tort to recover for damage to the plaintiff's conduit lines and manholes, located underground in Columbus Avenue, a public way in Springfield, which it was alleged was caused by the defendant while it was engaged in performing a written contract made with the city of Springfield for the construction of a tunnel, six feet in diameter, with outside circular steel walls, for the purpose of containing a sewer line. There was evidence that steel plates were put in place as the tunnel progressed, and through holes in these plates a mixture of cement and water, known as "grout," which was subjected to a pressure of fifty pounds per square inch, was discharged by a nozzle for the purpose of forming a cement crust on the outside top of the tunnel and of filling in the fissures in the earth which arose from the construction of the tunnel. The top of this tunnel was twenty-three and one half feet below the surface of Columbus Avenue at Pynchon Street and about twenty-three feet below the surface of this avenue at Worthington Street. The plaintiff had built a manhole near each of these points on Columbus Avenue, and a conduit consisting of a cement envelope containing tile conduits led into and from each manhole. The conduits were about two and one half feet high and their top was about three feet below the surface of Columbus Avenue. The manholes were seven

and one half to eight feet deep and had sand bottoms. There was evidence that cement was found in these manholes and conduits; and that cement appeared at two places upon the surface of this street and in the cellar of a business building located outside the limits of the way. The city had made borings along the proposed location of the tunnel, and the estimate contained in the contract as the amount of cement that would be required for these grouting operations was stated to be ten thousand bags. There was testimony that more than thirty-five thousand bags were actually used for which the defendant was paid at the rate of $2 a bag. There was testimony that the cement had hardened in the plaintiff's underground structure; and that it was necessary to remove it from the manholes by chipping it with an air compressor, and to remove some of the conduits and to substitute new ones at a cost to the plaintiff of a little more than $4,800. The jury could find that the cement deposited in the plaintiff's underground system came from the grouting operations of the defendant.

The plaintiff's declaration contained four counts, the first for negligence, the second for a nuisance, the third for the escape of a dangerous instrumentality and the fourth for trespass. The judge, subject to the plaintiff's exception, directed a verdict for the defendant on each of the last three counts. The jury returned a verdict for the defendant upon the first count. The only other exception saved by the plaintiff was to the limitation upon the admission in evidence of a provision of the contract, introduced in evidence, between the defendant and the city obligating the defendant to exercise care so as not to injure underground pipes, conduits and other structures in the street, and putting a duty upon the defendant to repair at its expense any damage that might be incurred by these structures, which the judge refused to permit the jury to consider as any evidence of the duty that the defendant owed to the plaintiff.

The plaintiff's manholes and conduits could be found to have been lawfully laid in the public way in accordance with permits duly granted in 1900 and 1921 by the proper municipal authorities to whom that power had been granted by

R. L. c. 122, § 2, G. L. c. 166, § 22.   The effect of the permits, however, was to authorize the location of these structures which would otherwise constitute a nuisance.   *Commonwealth* v. *Boston,* 97 Mass. 555.   *Lynch* v. *Lowell Electric Light Corp.* 263 Mass. 81.   The plaintiff by virtue of the permits secured the privilege of sharing in a common right, the enjoyment of which was in the public at large, and the participation in this common right by the plaintiff by constructing and maintaining its structures for the use of the public, or that portion thereof that desired to use the facilities furnished by the plaintiff, did not impose an additional servitude upon the way for it was a use of the way that was included within the purposes for which it was taken, laid out and constructed. The rights of the owners of the lands abutting the way, although they owned the fee, were not impaired by the installation and maintenance of this underground system. *Pierce* v. *Drew,* 136 Mass. 75.   *Lincoln* v. *Commonwealth,* 164 Mass. 1.   *Bishop* v. *North Adams Fire District,* 167 Mass. 364.   *Sears* v. *Crocker,* 184 Mass. 586.   *Cheney* v. *Barker,* 198 Mass. 356.   *Centebar* v. *Selectmen of Watertown,* 268 Mass. 121.

The permits did not give the plaintiff any title or proprietary interest in that part of the way that was occupied by its structures, and if the city acting under the power of eminent domain changed the grade of the way or even discontinued it, the plaintiff would have no claim for damages, even if it sustained a loss of these structures which could not be removed without destroying them.   *Natick Gas Light Co.* v. *Natick,* 175 Mass. 246.   *New England Telephone & Telegraph Co.* v. *Boston Terminal Co.* 182 Mass. 397.   *Boston Electric Light Co.* v. *Boston Terminal Co.* 184 Mass. 566. *Boston, Worcester & New York Street Railway* v. *Commonwealth,* 301 Mass. 283.

The plaintiff, although without any proprietary interest in the land, and notwithstanding its allegation that the manholes and conduits constituted "the plaintiff's close," was the owner of the equipment which it had installed in the way.   This equipment did not become a part of the realty but was the personal property of the plaintiff which re-

mained in its custody and possession. *Lorain Steel Co.* v. *Norfolk & Bristol Street Railway,* 187 Mass. 500. *French* v. *Jones,* 191 Mass. 522. *Hunt Drug Co.* v. *Hubert,* 298 Mass. 195.

It is settled by the verdict returned for the defendant on the count for negligence, to which no exceptions by the plaintiff are pending, that the damage sustained by the plaintiff was not caused by any negligence of the defendant, and the question presented is whether the evidence was sufficient to maintain any of the causes of action set forth in the last three counts of the declaration.

We first consider the count in trespass. The plaintiff was not a licensee toward the defendant but was lawfully occupying a portion of the underground of the street by virtue of its permits. The defendant was also lawfully occupying another portion of this underground area by virtue of its contract with the city. Both were occupying entirely different portions of the way. There was no evidence that the construction of the sewer would necessarily result in damage to the plaintiff's property. The plaintiff's system had been installed years before the defendant began the construction of the sewer, and the plaintiff, so far as the defendant was concerned, was entitled to enjoy its property free from any damage caused by the negligence of the defendant and from any interference due to any trespass by the defendant. *Alabama Power Co.* v. *Guntersville,* 236 Ala. 503. *New Hartford Water Co.* v. *Village Water Co.* 87 Conn. 183. *Tri-County Electric Membership Corp.* v. *Meador,* 282 Ky. 377. *Edison Illuminating Co.* v. *Misch,* 200 Mich. 114. *Atlantic City Gas & Water Co.* v. *Consumers' Gas & Fuel Co.* 4 Robb. (N. J.) 536. *Western Union Telegraph Co.* v. *Electric Light & Power Co. of Syracuse,* 178 N. Y. 325. *New York Steam Co.* v. *Foundation Co.* 195 N. Y. 43. *Frontier Telephone Co.* v. *Hepp,* 66 Misc. (N. Y.) 265. *Rutland Electric Light Co.* v. *Marble City Electric Light Co.* 65 Vt. 377.

Considerable quantities of cement were blown into the soil above the tunnel and some of it reached the plaintiff's underground system. At least the jury could so find. There

was, however, no evidence that the defendant intended to damage the plaintiff's property. A trespass requires an affirmative voluntary act upon the part of a wrongdoer and in that respect differs from negligence. There are many instances where a man acts honestly and in good faith, only to find that he was mistaken and had committed a trespass upon his neighbor's land. *Blatt* v. *McBarron,* 161 Mass. 21. *Congregation Beth Israel* v. *Heller,* 231 Mass. 527. *Cumberland Corp.* v. *Metropoulos,* 241 Mass. 491. *Geragosian* v. *Union Realty Co.* 289 Mass. 104. Those cases, however, differ somewhat from the instant case for in all of them the defendant intentionally and knowingly did the final act which itself constituted the trespass. Here there was no evidence that the defendant knew at any time while the grout was being discharged that some of it was seeping into the manholes or conduits. On the other hand, the defendant intentionally released a substance which might lodge anywhere that the pressure at which it was discharged would carry it. The distance it would travel would also depend upon the nature of the soil it encountered. Some of it was apparently forced into the fissures in the surrounding earth. It was conceded that the defendant knew the location of the plaintiff's conduits. Upon the evidence it could be found that the grout was driven into direct physical contact with a part of this underground system and did considerable damage, which was the immediate and direct, rather than the remote and consequential, result of forcing the grout into the underground area.

The defendant contends that it cannot be held liable in the absence of negligence or an intent to injure the plaintiff's property. It is true that it was settled by *Brown* v. *Kendall,* 6 Cush. 292, that one is not liable for an assault which he did not intend to commit and which was not caused by his negligence. That principle has no application here. *Exner* v. *Sherman Power Construction Co.* 54 Fed. (2d) 510, 514. It was decided in *Rockwood* v. *Wilson,* 11 Cush. 221, that a defendant doing a lawful act upon his own premises cannot in the absence of negligence be held liable for injuries resulting to land of another. The decision expressly excepts from

its application acts of a landowner that constitute a nuisance to land of his neighbors. In other words, the lawfulness of the act depends upon its capacity to injure the adjoining land. We do not think this decision governs the conduct of a landowner who intentionally sets in motion a force which in the usual course of events will damage the land of another. In this respect the defendant points out that no land of the plaintiff was injured. The plaintiff's property was lawfully located in the street and it remained personal property as against the abutter and the public. If the underground system was located upon property owned by the plaintiff, it would undoubtedly become a part of the realty; and if it was in the private property of another without right, that fact would not constitute a defence to a wrongdoer who damaged it. *Boutlier* v. *Malden,* 226 Mass. 479. *Buckley* v. *Arthur J. Hickey Family Laundry Co.* 261 Mass. 348. *Sarna* v. *American Bosch Magneto Corp.* 290 Mass. 340. But we do not think the fact that property is of such a kind and nature that it ordinarily becomes a part of the realty but technically remains personal property, not on account of its nature but on account of the limitations imposed upon it by its location in the public way, is material. The defendant had no more right to injure this underground system because it was personal property than it would have if it had become a part of the realty. The plaintiff and the defendant were each lawfully occupying a portion of the underground area of a public way, and the duties owed by one to the other were in the main no different than if they occupied adjoining parcels on the surface of the land. *Charing Cross Electricity Supply Co.* v. *Hydraulic Power Co.* [1914] 3 K. B. 772. *Edison Illuminating Co.* v. *Misch,* 200 Mich. 114. *New York Steam Co.* v. *Foundation Co.* 195 N. Y. 43.

The projection of the grout upon the plaintiff's property could be found to have arisen from an unreasonable use of the land occupied by the defendant and to have constituted a wrong toward the plaintiff. The throwing of stones or débris upon the land of another as a result of blasting operations on adjoining premises would constitute a trespass

even in the absence of negligence or any intent to injure the land of the other person. "Since the defendant is not sheltered by its permit from the consequences of its throwing stones upon the lands of the respective plaintiffs, it is liable to them for its direct physical trespass, regardless of negligence." *Hakkila* v. *Old Colony Broken Stone & Concrete Co.* 264 Mass. 447, 452. *Shaw* v. *Cummiskey,* 7 Pick. 76. *Boston Ferrule Co.* v. *Hills,* 159 Mass. 147. *Birch* v. *Boston & Maine Railroad,* 259 Mass. 528. *Hennessy* v. *Boston,* 265 Mass. 559, 561. *Currier* v. *Essex Co.* 286 Mass. 192.

The plaintiff next contends that the evidence was sufficient to entitle it to have the case submitted to the jury under the second count of the declaration which set forth a cause of action based on nuisance. The return of a verdict for the defendant upon the count based on negligence would not bar the plaintiff from proving the existence of a nuisance. A nuisance might exist in the absence of negligence. *Jones* v. *Great Barrington,* 273 Mass. 483. *Ferriter* v. *Herlihy,* 287 Mass. 138. *Jones* v. *Hayden,* 310 Mass. 90. *Bern* v. *Boston Consolidated Gas Co.* 310 Mass. 651. *Lamereaux* v. *Tula,* 312 Mass. 359.

A landowner has frequently been held liable for a non-negligent but unreasonable use of his premises which results in injuries to another, *Shea* v. *National Ice Cream Co. Inc.* 280 Mass. 206; *Beane* v. *H. K. Porter, Inc.* 280 Mass. 538; *Ferriter* v. *Herlihy,* 287 Mass. 138; *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292, and whether the use is beyond that which the landowner with due regard to the rights of others is entitled to make of his premises is usually a question of fact. *Stevens* v. *Rockport Granite Co.* 216 Mass. 486. *Marshall* v. *Holbrook,* 276 Mass. 341. The defendant was lawfully occupying a space underneath the way and was responsible for the proper and reasonable use of the locus so as not to cause damage to another who was occupying any part of this underground area. The forcing of liquid cement far beyond the site of the defendant's work and against or into the plaintiff's property we think could be found to be an improper and unreasonable use by the

defendant of the space allotted to it. *Shaw* v. *Cummiskey*, 7 Pick. 76. *Miles* v. *Worcester*, 154 Mass. 511. *Szathmary* v. *Boston & Albany Railroad*, 214 Mass. 42. *Currier* v. *Essex Co.* 286 Mass. 192. *Reppucci* v. *Poleari*, 291 Mass. 424. The defendant contends that a nuisance cannot exist unless an injury to land is involved. A nuisance arises out of the use to which land is put, but damages for injuries sustained are not confined to those having an interest in the land which was harmed. It is true that damages for injury to one's land, arising from a nuisance on the land of another, are recoverable. *Lincoln* v. *Taunton Copper Manuf. Co.* 9 Allen, 181. But it does not follow that the creator of a private nuisance is not liable unless an injury to land results or that he is not responsible to anyone other than those having an interest in the land affected. Quite the contrary is true: anyone who has been injured by a private nuisance is entitled to recover for the damage resulting to him. *Flynn* v. *Butler*, 189 Mass. 377. *Hakkila* v. *Old Colony Broken Stone & Concrete Co.* 264 Mass. 447. *Sullivan* v. *Dunham*, 161 N. Y. 290.

Sometimes the nuisance takes the form of a series of acts, or a continuing trespass, but it may arise from a single act. *Reppucci* v. *Poleari*, 291 Mass. 424. The nature of the defendant's conduct and the character of the resulting wrong are factors in the determination of the existence of a nuisance. *Shea* v. *National Ice Cream Co. Inc.* 280 Mass. 206. *Kasper* v. *H. P. Hood & Sons, Inc.* 291 Mass. 24. Enough here appeared to warrant the submission of that question to the jury.

The third count of the declaration purports to set out a cause of action upon the ground that the defendant brought upon its land an instrumentality of such a dangerous character that it was bound at its peril to see that it did not escape and cause damage to others. Here liability is sought to be fastened upon the defendant on grounds independent of negligence, nuisance and trespass. The application of the doctrine contended for by the plaintiff has been limited in this Commonwealth "to such unusual and extraordinary uses of property in reference to the benefits to be derived

from the use and the dangers or losses to which others are exposed, as should not be permitted except at the sole risk of the user." *Ainsworth* v. *Lakin,* 180 Mass. 397, 399. Tunnelling in a public way for the construction of a sewer or other structure is not an unusual undertaking or one of such an extremely dangerous nature that it must be performed at the sole risk of the one therein engaged. Neither was there anything inherently dangerous in a mixture of cement and water. They were ordinary materials widely used in construction work. The fact, if it was a fact, that this mixture was released under pressure at a distance of more than twenty feet underground did not render this an extremely dangerous operation which could not be employed unless the defendant furnished safeguards which would absolutely protect others from any loss or injury sustained by the release of the cement and water. *Kaufman* v. *Boston Dye House, Inc.* 280 Mass. 161. *Bratton* v. *Rudnick,* 283 Mass. 556. *Brian* v. *B. Sopkin & Sons, Inc.* 314 Mass. 180.

There was no error in refusing to permit the contract between the defendant and the city to be considered for the purpose of establishing any duty or obligation that the defendant owed to the plaintiff in the performance of the work, even if we assume the question is open now that the verdict on the negligence count is a closed incident. The plaintiff was a stranger to the contract and could not enforce any duty created by it that the defendant owed the city. *Brown* v. *Winthrop,* 270 Mass. 322. Williston on Contracts (Rev. ed.) § 367.

We see nothing in the defendant's contention that, as the city could do the work without being liable for any damage that might be sustained by the plaintiff's underground system by virtue of the provisions of the permits granted for the installation of this system, the defendant likewise is exempt from liability. In the first place, that question is not open as the defendant's answer was a general denial. It did not set up anything in the way of justification or a license. In the next place, there was no evidence to support such a contention and so far as the contract itself went it pointed in the opposite direction.

It follows that there was no error in excluding the evidence of the contract for the purpose mentioned or in directing a verdict on the third count of the declaration, but that the judge erred in directing verdicts on the second and fourth counts.

*Exceptions sustained.*