Willie Lee **CANNIDA**

v.

**CENTRAL GULF STEAMSHIP CORPORATION.**

Civ. A. No. 68–2725.

United States District Court,
E. D. Pennsylvania.

Oct. 8, 1970.

874

William Goldstein, Philadelphia, Pa., for plaintiff.

James B. Doak, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

JOHN W. LORD, Jr., Chief Judge.

Presently before the Court for determination is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. First, this Court finds that there are no material facts at issue. Plaintiff was a shore-based handyman, employed and paid as such by Northern Metal Company. He did not belong to a longshore union, did not work as a member of any longshore gang, and was not hired through longshore gang procedures. He had been so employed for a number of years, working a regular work week, rather than longshore daily employment, and was under the direction and orders of a yard boss.

On March 4, 1968, plaintiff, pursuant to instructions of a Northern Metal employee, was assisting in moving a cargo of fork lift trucks in the Northern Metal Yard to a point on one of its piers where they could be hooked to lifting gear and loaded on defendant's ship. Cannida's job was to steer the fork lifts, which were being towed by a rope, one at a time, by a tractor driven by a Northern Metal employee. Upon arrival at the loading point, the rope was unsecured, and the driver and plaintif went back to the storage area of the yard to move another lift to the ship's side. His sole function was to move the cargo to the loading point. He did not put the lifts into the lifting gear or assist in any way with the actual loading.

While being towed behind a tractor, on the pier, one of the fork lifts overturned and plaintiff, who was steering it, fell from the lift, and sustained fractures of his legs. Plaintiff alleges that this was caused by holes in the surface of Northern Metal Company's pier.

In its brief in opposition to defendant's motion for summary judgment, plaintiff cites Seas Shipping Company v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), as standing for the proposition that the mere fact of hiring non-seamen to do what were, historically, seamen's tasks, "does not minimize the worker's hazard and should not nullify his protection." Id. at 96, 66 S.Ct. at 878. However, Sieracki was employed by an independent stevedoring company which was under contract to load petitioner's ship; and, at the time of the accident, Sieracki was on board the ship, helping to load it.

In Nikiforow v. Rittenhouse, 277 F. Supp. 608 (E.D.Pa.1967), another case cited by plaintiff, Nikiforow, a Coast-guardsman helping to tow a private yacht off of a sandbar, was struck in the eye when a yacht stanchion around which line was looped broke loose. The Court there found that Nikiforow was performing a service for the yacht owner, and was accordingly owed the warranty of seaworthiness by the owner. Unlike plaintiff in the instant case, libellant there was performing work traditionally done by seamen.

The last of plaintiff's unpersuasive cases [1] is Litwinowicz v. Weyerhaeuser

1. Plaintiff filed a supplemental brief in reply to defendant's motion which cited Spann v. Lauritzen, 344 F.2d 204 (3rd Cir. 1965) ; Petterson v. Alaska S.S. Co., 205 F.2d 478 (9th Cir. 1953), affd. per curiam, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, rehearing denied 347 U.S. 994, 74 S.Ct. 848, 98 L.Ed. 1127 (1954) ; and Bradshaw v. The Carol Ann, 163 F. Supp. 366 (S.D.Tex.1956), all of which are inapposite.

Steamship Co., 179 F.Supp. 812 (E.D.Pa. 1959). There plaintiff was a longshoreman, which plaintiff here is not, engaged in the actual loading of the ship from railroad gondola cars. In the instant case, plaintiff was not engaged in the loading process, but left the lifts on the dock for others to load.

We find more persuasive the case of Partenweederei M S Belgrano v. Weigel, 299 F.2d 897 (9th Cir.), cert. denied, 371 U.S. 830, 83 S.Ct. 49, 9 L.Ed.2d 67 (1962). There the Court reversed a judgment entered in favor of libellant, a longshoreman injured by a ship's boom while driving a tractor on the dock and pulling a railroad car loaded with lumber to a point where it could be loaded with ship's gear. The Court held that plaintiff there had failed to prove that he had been performing work of a type traditionally done by seamen and further, that he was not entitled to a warranty of seaworthiness. Like plaintiff here, libellant there did not take part in the loading or stowing of cargo. The Court stated that "[H]is work was performed solely on the dock and in an operation preliminary to, but separate from, the work of loading the lumber onto the vessel. Although libellant's work brought him close enough to the vessel to be injured * * * liability arises not from the place of injury but from the nature of the work being performed." *Id.* at 902.

Further support for the Court's position is found in Daniel v. Skibs A/S Hilda Knudsen, 368 F.2d 178 (3rd Cir. 1966), where the Court held that a laborer, employed by the stevedore unloading cargo from a ship and placing it in the pier owner's warehouse, who was injured when a hoisting rope transferring cargo, which was already off the ship, from fork lift trucks to an overhead rail carrier broke, was not in the service of the ship, and not entitled to the warranty of seaworthiness.

The Court finds that Cannida was not in the service of the ship. He was not a stevedore. He was not injured on board ship or by any appurtenance of the vessel. He was subject to neither ship's personnel nor the longshoremen in the discharge of his duties.

### ORDER

And now, to wit, this 8th day of October, A.D. 1970, it is ordered that defendant's motion for summary judgment be and the same is hereby granted.

And it is so ordered.